UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ARTHUR MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:22-CV-61-PPS-JEM |
| | ) | |
| ANDREW J. THOMPSON and SHAPERO & ROLOFF CO., L.P.A., | ) ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

In this legal malpractice case brought under the court's diversity jurisdiction, Defendants Andrew Thompson and his law firm Shapero & Roloff Co., L.P.A., seek dismissal on the basis of a lack of personal jurisdiction. I held an evidentiary hearing on the matter which proved to be illuminating. Based on the hearing and other evidence in the record, I now find that Thompson and his law firm have sufficient minimum contacts with the State of Indiana to assume personal jurisdiction over them, and therefore, the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) will be denied.

### **Background**

The facts of this case are largely undisputed. Plaintiff, Arthur Martin, has sued attorney Andrew Thompson and his law firm for legal malpractice claiming they were negligent in handling Martin's claim under the Federal Railroad Safety Act (FRSA), 29 U.S.C. § 20109. Martin is a citizen of Indiana, and he worked for Indiana Harbor Belt Railroad Company (IHB) in East Chicago for about a decade, from April 20, 2010, until

November 30, 2020. [Am. Compl., DE 10, at 1-2.] Thompson is a citizen of Ohio and an attorney licensed in the state of Ohio. [*Id.* at 2.] He works for the firm Shapero & Roloff, which has a single office in Cleveland, Ohio. [Thompson Aff., DE 13-1, at ¶ 2.]¹

About eight or nine years ago, Thompson represented Martin in an earlier FRSA dispute with the IHB. Thompson testified at the hearing that during that earlier representation, he traveled to Hammond, Indiana to talk with Martin about the case.² Thompson was certainly aware that Martin lived in Indiana for the entirety of both legal representations. Martin testified at the hearing that he initially found Thompson on the Internet, and was drawn to him because Thompson specializes in railroad safety claims. Thompson has a practice representing railroad workers in multiple states and has represented at least a couple other employees from the State of Indiana over the years.

In early 2021, Martin reached out to Thompson to get some advice on an employment dispute he was having with IHB. Thompson agreed to represent Martin on this second occasion. Here's the back story on the underlying employment dispute: on November 30, 2020, Martin was terminated by IHB for alleged rule violations occurring on October 24, 2020, while Martin worked in the Whiting Yard located in East

---

¹ When ruling on a motion to dismiss for lack of personal jurisdiction, the court may rely on evidence outside of the pleadings, such as affidavits and declarations. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

² No party has ordered a transcript for this hearing, so a final transcript was not at the Court's disposal. The testimony presented at the hearing is therefore paraphrased in this opinion.

Chicago, Indiana. [Martin Aff., DE 18-1, at ¶ 3.]  About a month before he was sacked, and just a few days after the alleged rule violations occurred, on October 27, 2020, Martin complained to his supervisor about the locomotives he was working with not operating properly—they needed maintenance, and they had issues with the computer systems that operated the train's Positive Train Control (PTC). [FRSA Compl., DE 18-4, at 2.]

IHB held a disciplinary hearing relating to Martin's alleged rules violation.  The formal hearing was originally scheduled to take place on November 10, 2020 in Hammond, Indiana, but the hearing was rescheduled to November 18, 2020 and relocated to Riverdale, Illinois. [Martin Aff. ¶ 6.]  Four people testified at the hearing.  Martin, the foreman, and the two coworkers he was with on the day of the supposed rules violation—Jason Brown and Joshua Reno. [*Id.* ¶ 7.] Testifying on behalf of IHB was Dave Ruby, the company's Road Foreman.  *Id.*  It was this hearing that ultimately led to Martin's termination. [*Id.* ¶ 5.] Everyone who testified at the hearing lived in Indiana.  In addition, the underlying rules infraction occurred in Indiana.  Finally, and perhaps more importantly, the facts underlying the supposed safety violation that Martin reported also arose from events in Indiana.

Believing he had been retaliated against and improperly terminated for raising safety concerns, Martin retained Thompson to represent him in a claim against IHB for damages related to violations of the Federal Railroad Safety Act. [Martin Aff. ¶ 8.] According to Thompson, he did all of his work on the case from his office in Ohio.

[Thompson Aff. ¶ 6.] Specifically, from his office in Ohio, Thompson first reviewed the notice of discipline, hearing notices, and documentation supporting the charges against Martin which were presented by IHB prior to his termination. [*Id.* ¶ 8.] Then, he drafted an OSHA complaint, completed an online OSHA whistle blower complaint form which became an exhibit to the complaint, and faxed the OSHA complaint to the OSHA Chicago South Area Office in Tinley Park, Illinois. [*Id.* ¶ 10.] On March 30, 2021, Shapero & Roloff filed a complaint with the U.S. Department of Labor, under the FRSA, alleging that IHB retaliated against Martin for reporting hazardous working conditions. [DE 18-4.] The FRSA complaint was filed in Region 5 of the U.S. Department of Labor, the region covering Indiana claims. [Martin Aff. ¶ 12.] In April 2021, Thompson prepared a Designation of Representative Form and submitted it to the OSHA regional office in Toledo, Ohio. [Thompson Aff. ¶ 11.] Then, he prepared and submitted to the OSHA regional office in Toledo, Ohio, an expedited case processing request form. [*Id.* ¶ 12.]

On August 19, 2021, OSHA issued its opinion holding that there was not a reasonable cause to believe that Martin had been fired by IHB for lodging safety complaints against it, and OSHA therefore dismissed Martin's case. [DE 10-4.] That decision was issued by the OSHA regional office in Chicago, Illinois, and sent to Thompson by e-mail, and Thompson reviewed them in his Cleveland, Ohio office. [Thompson Aff. at ¶ 13.]

Thompson failed to tell Martin about the adverse OSHA decision, and he failed

4

to object and request a hearing before an ALJ within 30 days. [Martin Aff. ¶ 15.] Consequently, Martin lost his opportunity to appeal the findings, and lost his opportunity to seek any judicial review. [DE 10 at 6.] This, therefore, is the gist of Martin's legal malpractice claim: that Thompson bungled the case by failing to perfect an appeal of OSHA's dismissal of his complaint.

On October 6, 2021, Thompson came clean and told Martin that he dropped the ball: he had missed the appeal date, and indicated he could no longer provide direct advice on the matter. [Martin Aff. ¶ 16.] In an e-mail written on October 6, 2021, Thompson told Martin, "I would generally direct you to your State or County Bar Association and ask for a referral to an attorney who handles legal malpractice matters. I again express my deepest regrets for what happened." *Id.*

Thompson claims that had an appeal been taken, any hearing would most likely have occurred at the OSHA regional office in Chicago, Illinois. [*Id.* ¶ 14.] For his part, Martin points to the fact that the FRSA has a provision that would allow Martin to bring a de novo FRSA action in the United States District Court, for the Northern District of Indiana, if the Department of Labor did not reach a final decision on Martin's FRSA claim within 210 days of filing the complaint with the Department of Labor. [DE 18 at 6; *see* FRSA, 49 U.S.C. § 20109(d)(3).]

Defendants have moved for dismissal of the claims under Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction.

**Discussion**

A federal court's personal jurisdiction is determined by the laws of its forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Indiana's long-arm statute allows jurisdiction so long as it's consistent with the Due Process Clause of the Fourteenth Amendment. Ind. R. Trial. P. 4.4; *Rodriguez v. Cavitec AG*, No 1:09-CV-336-JVB, 2010 WL 2519715, at *4 (N.D. Ind. June 14, 2010). As a result, the state and federal inquiries merge and the determinative issue is whether the exercise of jurisdiction over Thompson and his law firm comports with the federal Due Process Clause. *Tamburo*, 601 F.3d at 700; *McKannan v. National Council of Young Men's Christian Assocs. of the U.S.*, No. 3:10-cv-88-RLY-WGH, 2010 WL 4668437, at *3 (S.D. Ind. Nov. 9, 2010).

Martin bears the burden of establishing personal jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Because I held an evidentiary hearing, Martin must establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (2002) (recognizing the plaintiff's burden depends upon whether an evidentiary hearing has been held)).

Personal jurisdiction can be either general or specific. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440, 444 (7th Cir. 2010). General jurisdiction is proper in the "limited number of fora in which the defendant can be said to be 'at home'" such as a corporation's state of incorporation or state of the principal place of business. *Advanced Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Everyone seems to agree that there is no general

6

jurisdiction over Thompson in this case. In other words, no one could reasonably contend that Thompson calls Indiana "home."

Instead, Martin claims there is specific jurisdiction over Thompson and his firm based on their contacts with Indiana. [DE 18 at 5.] Specific jurisdiction is available for a suit that arises out of the defendant's forum-related activity. Specific jurisdiction is appropriate where: (1) the defendant purposefully availed itself of the privilege of doing business in a state or purposefully directed its activities at the state, (2) the alleged injury arises out of or relates to the defendant's activities in that state, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702; *see also Felland v. Clifton*, 682 F.3d 665, 672-73 (7th Cir. 2012). This test aims to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Turning to whether specific personal jurisdiction exists over defendants, I believe at least two of the three factors set out above strongly favor exercise of personal jurisdiction over Mr. Thompson. First, defendants purposefully availed themselves of doing business in Indiana when they agreed to represent Martin, an Indiana citizen, in a case against his employer, based upon facts that occurred at IHB's Whiting yard located in East Chicago, Indiana. Thompson and his firm operated a website that touted

7

himself as a railroad safety expert. Indeed, Thompson represents railroad workers from many states. When Thompson took the case, he knew that he was representing an Indiana citizen against an Indiana corporation, involving an incident that occurred in Indiana and that almost all the witnesses were from Indiana. In other words, when Thompson took on the case he knew that the critical issue was whether Martin was retaliated against by IHB. And all of the facts relating to the underlying alleged retaliation occurred in Indiana, and Thompson knew it.

What's more, Thompson previously represented Martin relating to his employment in Indiana and even visited him in the state of Indiana. Martin also claimed during the hearing that he had referred a lot of co-workers to Thompson for railroad safety claims, all regarding incidents that occurred in Indiana. While Thompson quibbled about how many people were actually referred, or how many additional clients he got out of this process, he did concede that he at least talked to and counseled some people from Indiana that Martin referred to him. All of this is to say that there was nothing random or fortuitous about Thompson representing Martin in this case. He happily accepted Indiana clients in the past relating to events that took place in Indiana, and he was doing the same thing on this occasion. In short, by affirmatively taking on the Martin retaliation case, Thompson purposely directed his activities to the State of Indiana.

The second factor—whether the alleged injury arises out of or relates to the defendant's activities in that state—is a closer call. It is certainly true that the alleged

injury in this malpractice case arises out of an incident occurring in Indiana—IHB's alleged wrongful termination of Martin as a whistle blower. Under Indiana legal malpractice law, Martin will have to show, not only that Thompson blew the deadline, but that the missed deadline prejudiced him. The Indiana Supreme Court has explained the "trial-within-a-trial" doctrine governs claims of legal malpractice: the client must prove not only that the lawyer's conduct fell below the governing duty of care, but also that the client would have prevailed had the lawyer not been negligent. *Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 65-66 (Ind. 2018) ("[T]he client must show the outcome of the botched representation would have been more favorable to the client had the lawyer not been negligent."); *see also Drendall Law Office P.C. v. Mundia*, 136 N.E.3d 293, 304 (Ind. Ct. App. 2019) ("[T]o prove proximate cause, a plaintiff alleging malpractice must show that the outcome of the underlying litigation *would have* been more favorable had the lawyer not been negligent.") (emphasis in original). This means that to prevail in his malpractice claim, Martin will have to show that he was likely to prevail in the OSHA appeal that he never received. In other words, to show that he was injured by Thompson's malpractice, Martin will have to show that he was actually retaliated against for making safety complaints on October 27, 2020. And of course, all the facts relating to that alleged retaliation occurred in Indiana. But because the actual act of malpractice (the missed appeal deadline) occurred in states other than Indiana, this second factor, while having much to do with underlying facts occurring in Indiana, probably favors Thompson.

9

The final factor for specific personal jurisdiction is simply a fairness inquiry: whether it "offend[s] traditional conceptions of fair play and substantial justice" to hold the defendants subject to jurisdiction here. *Burger King*, 417 U.S. at 464. For starters, it isn't lost on me that after Thompson realized he had missed the deadline to object and request a hearing before an ALJ, he e-mailed Martin and said, "I would generally direct you to your State or County Bar Association and ask for a referral to an attorney who handles legal malpractice matters. I again express my deepest regrets for what happened." [Martin Aff. ¶ 16.] It seems completely unfair for attorney Thompson to admit his mistake, counsel Martin to contact his state bar association (which would be in Indiana) to find an attorney to handle the malpractice matter, but then turn around and now claim it is unfair for him to be hailed into court in Indiana. What's more, Thompson has an extensive practice, he's come to Indiana to represent Martin in the past, he advertises his multi-state services on his website, and he's represented a number of other Hoosiers in their disputes with railroads. Given all these facts, subjecting Thompson to the jurisdiction of Indiana courts is not in the least bit unfair.

The defendants argue that none of the contacts in this case were created by the defendants, or arise from contacts the defendant himself created with the forum. But I again think this is a mischaracterization of the situation at hand. For example, in *Klump v. Duffus*, 71 F.3d 1368, 1372 (7th Cir. 1996), the Court found personal jurisdiction in a legal malpractice case, reasoning in part that "[i]n the course of that [trial] preparation [the attorney] was in frequent telephonic and written contact with [plaintiff], her

10

treating physicians, and [the insurance carriers], all of whom were located in Illinois. For that matter, the defendants have not notified us of any party relevant to the litigation who was not located in Illinois." Similarly, all of the relevant parties in the underlying retaliation case are located in Indiana: Martin, his co-workers, witnesses to the alleged safety violation, and IHB. As the Seventh Circuit deduced in *Klump*, I think it is appropriate to conclude that Thompson personally availed himself of the privilege of conducting business in Indiana.

    Defendants also cite *Walden v. Fiore*, 571 U.S. 277, 286 (2014), which stated:

> To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction . . . . Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.

*Id.* (quoting *Burger King*, 471 U.S. at 475). [DE 14 at 5, 9.] The factual basis in *Walden* and the type of lawsuit involved in that case is wildly different from this case. In *Walden*, a Georgia police officer was working at a Georgia airport when he searched the respondents (Nevada residents) and ultimately seized a large amount of cash from them. *Id.* at 279-80. Respondents filed a tort suit against the police officer in district court in Nevada. *Id.* at 281. The district court dismissed the suit, finding the Georgia search and seizure did not establish a basis to exercise personal jurisdiction in Nevada. The Ninth Circuit reversed, and then the Supreme Court upheld the district court's decision, finding it indeed lacked personal jurisdiction.

11

The relationship with the forum state in that case was so much more attenuated than in the present one. In this case, in addition to Thompson's communications with Martin who lives in Indiana, there are additional Indiana connections, such as Thompson agreeing to file suit against an Indiana corporation involving events that took place in Indiana, with Indiana witnesses, as well as his acceptance of referrals from Indiana, and his ongoing relationship with Martin (this was, after all, the second time he had represented him). *See, e.g., Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990) (finding, "[w]hile not dispositive to our conclusion, there are other relevant factors that weigh in favor of finding purposeful availment in this case" including the attorney's connections and business dealings with other residents in the state).

Defendants also cite a malpractice case from the First Circuit, *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995). Like the other cases cited by defendants, the facts are easily distinguishable. In *Sawtelle*, the plaintiffs' son was killed when the aircraft he was flying was struck over the New Hampshire-Vermont border by an aircraft from Florida. *Id.* at 1386. Several months later, the plaintiffs, New Hampshire residents, contacted an attorney in New Hampshire to discuss the filing of a wrongful death suit on behalf of their son's estate. *Id.* The local attorney referred plaintiffs to a California-based law firm, presumably because of its expertise in aircraft litigation. *Id.* The California firm assigned the case to the defendant, a Virginia resident and attorney for the law firm. *Id.* That lawyer never personally met the plaintiffs, but he sent them letters and spoke to

12

them during the representation. *Id.* The parties decided to file the wrongful death claim in Florida. *Id.* After settling the wrongful death claim, the plaintiffs learned the estate of their son's flight instructor (who also died in the crash) had settled for a substantially larger amount, and the plaintiffs filed their legal malpractice action against the defendants in federal district court in New Hampshire. *Id.* at 1386-87. The opinion in *Sawtelle* analyzes whether jurisdiction is appropriate over the several law firms involved. Defendants emphasize the fact the court found "[t]he communications sent into New Hampshire were ancillary to the allegedly negligent non-forum activities," and it was the defendants' investigation, conducted in Florida and Virginia, "which informed their judgment about the amount and propriety of the proposed settlement." *Id.* at 1390. While it is certainly true that "[t]he mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state [because] more is required," that *more* exists here. *Id.* at 1392.

The fact that the client lived in Indiana and Thompson was communicating with him in Indiana is by no means the only connection with this state. As I've recapped above, the events leading up to Martin's firing occurred in Indiana, he was working at IHB's Whiting yard in Indiana, any fact discovery would necessarily entail interviewing his co-workers (who are from Indiana), and Thompson previously visited Martin during another representation based in Indiana, agreed to represent him again, and in return for his loyalty, received referrals for other Indiana residents that had railroad

13

safety claims.

Finally, I should mention the case of *Schyler & Assocs., P.C. v. Paoli Law Firm*, P.C., No. 2:20-cv-467-PPS-APR, 2021 WL 2686379 (N.D. Ind. June 30, 2021), cited by Defendants, which is a case I decided last year, and found personal jurisdiction lacking. Paoli was an attorney fee lawsuit where plaintiff, an Indiana law firm, reached out to the defendants, a Montana law firm, to file a lawsuit in Montana for an Indiana man and his wife relating to a trucking accident that occurred in Montana. *Id.* at *1. The law firms agreed to split a contingency fee. *Id.* The Montana firm filed the lawsuit and reached a favorable settlement for the couple. *Id.* When the Montana firm reached out to the Indiana firm to modify the fee sharing agreement since it had done all of the work, a disagreement arose, and the Indiana firm sued in Indiana court to recover its fees. *Id.* at *2. I noted that during the entire litigation, the Indiana firm's activity only amounted to "two telephone calls and a handful of emails." *Id.* at *1. And I recognized the Montana firm did not make any contacts with Indiana, and nearly everything in the underlying case occurred in Montana. *Id.* at *4. By contrast, in this case, all of the facts making up the underlying case occurred in Indiana, and Thompson did make contacts with Indiana: he accepted his second case from an Indiana resident, against an Indiana corporation, based on events that occurred at the Whiting Yard in East Chicago, Indiana.

In sum, Martin has shown by a preponderance of the evidence that personal jurisdiction exists in this case. Weighing all of the evidence, two of the factors relating

14

to specific personal jurisdiction strongly favor Martin and the third slightly favors Thompson.  I find that Martin has proved by a preponderance of the evidence that exercising personal jurisdiction is proper.  Because the alleged malpractice relates to an FRSA matter that was centered here, the events, witnesses and company are from Indiana, and Thompson traveled here previously to talk with Martin about his prior case, all of these Indiana ties and intentional direction of activities into Indiana make it an appropriate exercise of power to hale defendants into court here.  And I fail to see a compelling reason, based on other considerations, that renders jurisdiction unreasonable.

## Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) for lack of jurisdiction [DE 13] is DENIED.

SO ORDERED.

ENTERED: November 9, 2022.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT